IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION,
LOCAL UNION NO. 2,

        Plaintiff,

    vs.                      **Case No. 05-4086-RDR**

McELROY'S, INC.,

        Defendant.

_____

## MEMORANDUM AND ORDER

This is a dispute as to whether defendant has terminated or can terminate participation in a collective bargaining agreement and whether an arbitrator's decision directing the execution of a new three-year collective bargaining agreement should be enforced. This case is now before the court upon plaintiff's motion to confirm an arbitration award and defendant's motion for summary judgment.

Stipulated facts

The facts in this case have been stipulated to by the parties. Doc. No. 12. Those facts are as follows:

1. Plaintiff is the successor in interest to the Sheet Metal Workers' International Association, Local Union No. 77 (hereafter "the Union") by virtue of a voluntary merger supervised by the Sheet Metal Workers' International Association, the parent organization of the two Locals.

2. Defendant McElroy's, Inc. (hereafter "McElroy's") is a mechanical contractor organized under the laws of the State of Kansas with its principal place of business in Topeka, Kansas.

3.   On September 9, 2002 McElroy's and the Union signed a multi-party pre-hire collective bargaining agreement (hereafter "the agreement").

4.   The agreement is governed by Section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f).

5.   McElroy's and the Union operated under the terms and conditions of the agreement from the effective date of June 24, 2002 until May 31, 2005.

6.   On February 25, 2005 McElroy's faxed a letter to the Union giving notice of its intent to terminate the agreement.

7.   After receiving the February 25, 2005 letter from McElroy's, the Union mailed a letter to McElroy's on the same date expressing its desire to open contract negotiations for a new bargaining agreement to replace the agreement in effect at that time.

8.   On March 11, 2005 the Union mailed a letter to McElroy's reiterating its desire to negotiate a new collective bargaining agreement and listing potential dates and places for meeting with the various contractors.

9.   On March 21, 2005 McElroy's faxed a letter to the Union acknowledging receipt of the Union's March 11, 2005 letter.

10.   On April 11, 2005 the Union mailed a letter to McElroy's inviting McElroy's to join contract negotiations scheduled for April 18, 2005.

11.   On April 12, 2005 McElroy's mailed a letter to the Union acknowledging receipt of the Union's April 11, 2005 letter and declining the invitation to join contract negotiations.

12.   In an undated letter to McElroy's, the Union acknowledged receipt of McElroy's April 12, 2005 letter and stated the Union's belief that McElroy's had failed to meet its obligations under the agreement.

13.   On May 16, 2005 McElroy's acknowledged receipt of the Union's undated letter identified as Exhibit H and stated that McElroy's intended to fully comply with the

2

terms of the agreement until May 31, 2005.

14. On May 25, 2005 the Union hand-delivered a letter to McElroy's acknowledging receipt of McElroy's May 16, 2005 letter.

15. On May 26, 2005 the Union submitted a Collective Bargaining Reporting Form – Notice of Unresolved Dispute to the National Joint Adjustment Board (hereafter "NJAB"). McElroy's received a copy of that notice on May 27, 2005.

16. On June 1, 2005 the NJAB faxed a letter to McElroy's giving notice of a hearing to be held in regard to the Union's grievance.

17. One June 2, 2005 McElroy's faxed a letter to the NJAB in response to the NJAB's letter dated June 1, 2005 and summarizing McElroy's position on the issue.

18. McElroy's elected not to appear for the hearing set by the NJAB and instead submitted a letter and memorandum to the NJAB on June 22, 2005 setting forth its position in the matter.

19. The NJAB issued a Decision on June 28, 2005 directing McElroy's and the Union to execute a new three-year collective bargaining agreement with terms as set forth in that Decision.

20. The Union filed this Action on July 28, 2005 to enforce the Decision issued by the NJAB on June 28, 2005.

<u>Arguments and analysis</u>

Defendant's position in this case is that defendant is entitled to repudiate and withdraw from the collective bargaining agreement as of the expiration date of the agreement, May 31, 2005. In other words, defendant contends that defendant can unilaterally terminate its relationship with plaintiff as of the expiration date of the agreement. Plaintiff's position in this case is that the parties agreed in the collective bargaining agreement to a contract

covering two consecutive periods - one period from 2002-2005 with the terms stated in the contract, and a successor period with arbitrated terms if the parties could not agree to the terms.

Because both sides in this case agree that defendant may not repudiate and withdraw from the agreement until the agreement has expired, the issue is when did or when does the agreement expire. This requires a construction of the contract.

Article XIII Section 1(A) of the agreement states:

> This Agreement and Addenda Numbers ARTICLE 1 through ARTICLE XIII attached hereto shall become effective on the 1st day of June, 2002 and remain in full force and effect until the 31st day of May 2005 and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party, provided, however, that the contract expiration date contained in this Section shall not be effective in the event proceedings under Article X Section 8 are not completed prior to that date. In the event this Agreement shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X Section 8 have been otherwise completed.

In this case, written notice of reopening was served, but defendant did not participate in negotiations to renew or extend the agreement. The contract states that the "Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party, provided, however, that the contract expiration date contained in this Section shall not be effective in the event proceedings under Article X Section 8 are not completed

4

prior to that date." Thus, under the terms of the agreement, the expiration date of May 31, 2005 is not effective in the event that proceedings under Article X Section 8 are ongoing.

Plaintiff contends that the contract did not expire, in spite of defendant's disinterest in negotiating a renewed contract, because proceedings did go forward under Article X Section 8. In effect, plaintiff asserts that the contract provides for the arbitration of the terms of a renewed contract when negotiations for renewal have failed.

Article X Section 8 of the agreement states:

. . . [A]ny controversy or dispute arising out of failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided.
      (a) Should the negotiations for renewal of this Agreement become deadlocked in the opinion of the Local Union or of the Local Contractors Association, or both, notice to that effect shall be given to the office of the General President of the Sheet Metal International Association and the national office of the Sheet Metal & Air Conditioning Contractors National Association, Inc. If the General President of Sheet Metal Workers' International Association and the Chairman of the Labor Committee of Sheet Metal and Air Conditioning Contractors National Association, Inc. believe the dispute might be adjusted without joint to final hearing before the National Joint Adjustment Board, each will then designate a panel representative who shall proceed to the local where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the General President of the Sheet Metal Workers' International Association and the national office of Sheet Metal & Air Conditioning Contractors National Association, Inc. shall promptly be notified without recommendation from the panel of representatives. Should the President of the Sheet Metal Workers' International

Association or the Chairman of the Labor Committee of
Sheet Metal & Air Conditioning Contractors National
Association fail [or] decline to appoint a panel member
or should notice of failure of panel representatives to
resolve the dispute be given, the parties shall promptly
be notified so that either party may submit the dispute
to the National Joint Adjustment Board.

The dispute shall be submitted to the National Joint
Adjustment Board pursuant to the rules as established and
modified from time to time by the National Joint
Adjustment Board.  The unanimous decision of said Board
shall be final and binding upon the parties as soon as
possible after the decision has been reached. . . . .
(d) Unless a different date is agreed upon mutually
between the parties or is directed by the unanimous
decision of the National Joint Adjustment Board, all
effective dates in the new agreement shall be retroactive
to the date immediately following the expiration of the
date of the expiring agreement.

This is sometimes called an "interest arbitration" provision.

See West Coast Sheet Metal, Inc. v. NLRB, 938 F.2d 1356, 1357

(D.C.Cir. 1991) ("[a]n 'interest arbitration' clause in a

collective-bargaining agreement authorizes binding arbitration of

deadlocks that occur during renewal negotiations").  In this case,

plaintiff contends that the "dispute arising out of the failure of

the parties to negotiate a renewal" of the agreement was submitted

to the National Joint Adjustment Board which issued a decision

directing plaintiff and defendant to execute a new three-year

collective bargaining agreement with terms as set forth in the

decision.

Defendant concedes that plaintiff's construction of the

agreement is supported by holdings in three different circuit

courts of appeals.  Beach Air Conditioning v. Sheet Metal Workers,

6

55 F.3d 474, 477-78 (9th Cir. 1995); <u>Sheet Metal Workers Int'l Ass'n</u> <u>Local 110 Pension Trust Fund v. Dane Sheet Metal Inc.</u>, 932 F.2d 578, 581-82 (6th Cir. 1991); <u>Sheet Metal Workers Local Union No. 20</u> <u>v. Baylor Heating and Air Conditioning, Inc.</u>, 877 F.2d 547 (7th Cir. 1989). Defendant argues that the court should not follow these holdings for several reasons.

First, defendant emphasizes that the agreement is a § 8(f) contract under which either party may repudiate the relationship upon the expiration of the contract. See <u>NLRB v. Triple C</u> <u>Maintenance, Inc.</u>, 219 F.3d 1147, 1152 (10th Cir. 2000) (discussing difference between § 9(a) contracts where there is a duty to bargain in good faith after expiration and § 8(f) contracts which permit either party to repudiate upon expiration). The court does not believe this is grounds to reject plaintiff's construction of the agreement. As stated before, the key question is when and if the agreement expired so that defendant could exercise the right to repudiate. Plaintiff contends that defendant agreed when it entered the contract that the agreement would not expire on May 31, 2005 without the consent of both sides and therefore, defendant did not have the right to repudiate the relationship with plaintiff when it attempted to do so. The case law cited above supports plaintiff's argument. It should be noted that those cases also involve § 8(f) agreements. Therefore, we reject defendant's first contention.

Defendant next argues that the "interest arbitration" provisions of Article X Section 8 do not apply to these facts because, for two reasons, there was no "controversy or dispute arising out of failure of the parties to negotiate a renewal of this agreement." First, defendant asserts that plaintiff sought a new bargaining agreement, not the renewal of the agreement that the parties made in 2002, as per plaintiff's letter of February 25, 2005. Second, defendant claims that there was no controversy or dispute arising out of a failure to negotiate a renewal of the agreement because defendant simply did not want to negotiate a renewal of the agreement.

We reject defendant's arguments. Plaintiff's February 25, 2005 letter states that plaintiff seeks to negotiate a "new bargaining agreement" in "accordance with Article XIII of the current agreement." Article XIII speaks of "reopening" the agreement upon proper notice and of procedures for negotiating or arbitrating the provisions of the reopened or renewed agreement. The reference to Article XIII makes clear, if there was any doubt, that plaintiff sought to negotiate a renewal of the agreement. Plaintiff's intent was further clarified in plaintiff's March 11, 2005 letter which expresses plaintiff's desire to renegotiate the labor agreement "as stated in letter, dated February 25, 2005." In sum, we believe plaintiff was attempting to negotiate a renewal of the agreement.

8

We further believe there was a "controversy or dispute arising out of the failure of the parties to negotiate a renewal" of the agreement which triggered the interest arbitration provision contained in Article X Section 8. The "controversy or dispute" is evident in this case.  In our opinion, a failure of one side to participate in negotiations for a renewed agreement leads to a "failure of the parties to negotiate a renewal."  In addition, as plaintiff argues, the arbitrator - the NJAB - found that the conditions required for arbitration had been met.  The NJAB rendered this conclusion after considering the brief filed on behalf of defendant which took the same position defendant takes here.  The NJAB's decision provides additional support for plaintiff's construction of Article X Section 8.  See <u>M.R.S. Enterprises, Inc. v. Sheet Metal Workers' International Association</u>, ____ F.Supp.2d ____, 2006 WL 931572 (D.D.C. 2006) (court should defer to arbitration board's decision as to whether a deadlock was reached).

Defendant also contends that reference to interest arbitration under Article X Section 8 is inappropriate here because the negotiations for renewal were not "deadlocked" - - rather, they did not exist. A synonym for "deadlock" is "standstill."  It appears to the court that negotiations are at a "standstill" when one side refuses to negotiate.  A contrary construction would, in the opinion of other courts, obviate the duty of the parties to

negotiate which was a duty they accepted when they signed the original agreement.  Beach Air Conditioning, 55 F.3d at 477; Sheet Metal Workers International Association v. Architectural Metal Works, Inc., 259 F.3d 418, 428-29 (6th Cir. 2001); M.R.S. Enterprises, at p. *5.

Defendant insists that the language of the agreement should be read to be consistent with the principle that "employers who have an 8(f) relationship with a union do not have an obligation to bargain for a successor contract."  James Luterbach Constr. Co., 315 N.L.R.B. 976, 979, 1994 WL 715997 (1994).  The court, however, does not find that plaintiff's reading of the agreement is inconsistent with that principle.  While employers in an 8(f) relationship with a union do not have a statutory obligation to bargain for a successor contract, they may create a binding contractual obligation under the terms of a labor agreement.  We concur with those courts that have found such an obligation in agreements like the agreement in this case.

Defendant additionally contends that this case is different from other published cases involving similar language because the agreement in this case requires before submission of a dispute to the NJAB that there be notice to the Sheet Metal International Association and the Sheet Metal & Air Conditioning Contractors National Association for possible adjustment of any deadlocked negotiations for renewal.  Defendant contends that this step was

10

not taken and, therefore, the NJAB did not have authority to render a decision in this matter.

We agree with plaintiff that under the holding of <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79 (2002), defendant is raising a procedural question which is properly decided by the arbitrator.  In this instance, the NJAB decided that the procedural requirements for arbitration through the NJAB had been met.  The court shall honor the finding of the arbitrator on this point.

Finally, defendant asserts that if the court upholds the NJAB decision in this matter, the court must modify the decision to make clear that the "interest arbitration" provision of the original agreement does not extend into the successor agreement.  In other words, there is only a three-year extension of the relationship between plaintiff and defendant; there is no perpetual obligation or renewal clause in the successor agreement.  Plaintiff agrees with this point.  Therefore, the court shall modify the NJAB award by removing the obligation to renew the agreement under Article X Section 8 and Article XIII of the successor agreement.

<u>Conclusion</u>

Consistent with the memorandum above, the court shall deny defendant's motion for summary judgment and grant plaintiff's motion to confirm the arbitration award.

**IT IS SO ORDERED.**

Dated this 18th day of April, 2006 at Topeka, Kansas.

                              s/Richard D. Rogers
                              United States District Judge